Pennsbury School District, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education and Robert G. Scanlon, Secretary of Education for the Commonwealth of Pennsylvania, Respondents.

September 12, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Paul L. Stevens*, with him *Jeffrey T. Tucker, Curtin and Heefner*, for petitioner.

*Phillip A. Ayers*, Assistant Counsel, with him *Michael A. Davis*, Chief Counsel, for respondent, Department of Education.

OPINION BY JUDGE ROGERS, November 9, 1983:

Pennsbury School District (Pennsbury) has filed a petition for review of a final order of the Secretary of Education denying Pennsbury's application for an allowance for excess driver hours for the school years 1971-1972, 1972-1973, and 1973-1974. At oral argument, Pennsbury abandoned its claim for the allowance for 1971-1972.

The excess driver hours allowance was instituted by the State Board of Education in 1972 as a part of the already established annual transportation reimbursement to school districts for their transportation expenses provided by Section 2541 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §25-2541. The new allowance was in relief

of districts whose vehicles were slowed by heavily congested traffic conditions or driver layover time for economy in operation. The conditions upon which the excess driver hours allowance might be granted and the procedures for applying are described at 22 Pa. Code §4-651(4), later recodified at 22 Pa. Code §23.-35(b)(4) as follows:

When heavily congested traffic conditions or driver layover time for economy in operation requires . . . a greater number of driver hours than the quotient of the total annual mileage for approved contracted transportation to and from school divided by 15 miles, the applicant district may qualify for an additional allowance for excess driver hours subject to approval by the Department of Education. School districts requesting an allowance for excess driver hours shall submit with their request for reimbursement a written justification and supporting evidence of entitlement for such allowance to the Department of Education for review, evaluation and approval of the number of excess hours allowable for reimbursement purposes, if any.

The additional amount, if any, allowable for reimbursement purposes on account of approved excess driver hours shall be computed by multiplying the number of excess hours approved by the department times $3.00

It will be noticed that the regulation describes the excess driver hours allowance as "an additional allowance" to the reimbursements of transportation costs paid school districts; that requests for the allowance were to be submitted with the usual request for reimbursement; that written justification and evidence of entitlement were called for; and that the method of computing the amount of the allowance is specified.

The regulation was published in the Pennsylvania Bulletin on January 29, 1972 and April 22, 1972.

Pennsbury submitted timely claims for reimbursement for its usual annual transportation subsidy for the school years 1972-1973 and 1973-1974 on forms supplied by the Department of Education (Department), respectively, on August 20, 1973 and October 10, 1974. Under a column labeled "approved excess driver hours," Pennsbury entered the number of hours that its buses were in use each day for the school year 1972-1973 but entered nothing under that column for 1973-1974. It did not provide any justification of its entitlement to the excess driver hours allowance in either year.

Pennsbury alleges that it first had actual knowledge of its eligibility for the allowance for excess driver hours in May, 1977, as the result of a telephone conversation with a Department employee. On May 25, 1977, Pennsbury submitted an application for an excess driver hours allowance for the school years 1972-1973 and 1973-1974. This consisted of a worksheet showing a calculation of allowances in the amount of $81,504 and a letter giving written justification and supporting evidence of entitlement. The application was refused as untimely on the ground that it had not been filed with Pennsbury's requests for reimbursement for those years. An administrative hearing was conducted, after which the Secretary, adopting the recommendation of the Hearing Examiner, dismissed Pennsbury's application for the reason first given, untimeliness.

Pennsbury contends that it should be paid the excess drivers hours allowances for a number of reasons, none of which we believe are effective.

Pennsbury first claims entitlement for the allowance for the 1972-1973 school year because it in fact

included information on its claim for its transportation subsidy reimbursement on the basis of which the Department could have calculated the excess driver hours allowance. The information claimed to be sufficient was a record of the total miles traveled and hours of operation of each of its vehicles. The regulation however requires more than statistical information concerning the district's operations; it requires the submission of "written justfication and supporting evidence of entitlement to the allowance," upon consideration of which the Department could decide whether the excess driver hours were the result of "heavily congested traffic conditions or driver layover time for economy in operation."

In the same vein, Pennsbury says that it was the Department's duty to make the appropriate calculations from the information which Pennsbury unknowingly supplied in its 1972-1973 usual claim for reimbursement, citing Section 2521 of the Public School Code of 1949, 24 P.S. §25-2521, which requires the Department to correct errors on certificates of data in support of reimbursement, which if left uncorrected, would result in the school district receiving "more or less of the state appropriation than [it] is justly due." The flaw in this argument lies in the fact that Pennsbury did not make an error in its certificate; it simply failed to apply for the excess driver hours allowance as the regulation requires.

Pennsbury further charges that the Department was responsible for its not applying for the excess driver hours allowances in both 1972-1973 and 1973-1974 and should therefore be estopped from asserting the untimeliness of Pennsbury's application made in 1977. It points in this connection to the asserted failure of the Department either to notify Pennsbury of the availability of the allowance or to provide instruc-

tion, forms, guidance, or other information which would enable Pennsbury to make timely applications. The evidence of these derelictions, it says, is the testimony of Monta Baxter, the school district's Transportation Supervisor, and Michael Anderson, a former employee in the Controller's Office of the Department of Education. Mr. Baxter testified that he "believed" that in conversations with Department officials he was told that Pennsbury was not eligible for the allowance for excess driver hours, and Mr. Anderson testified that he was told by his superiors in the Department during April of 1974 not to talk to school districts about excess driver hours and not to distribute a worksheet which he had developed for computing the allowance. The hearing examiner found that there was not a "clear showing of any pattern of discouragement or misrepresentation in the excess driver hours payment program." We agree with the hearing examiner. Mr. Baxter's testimony lacks certainty and Mr. Anderson's testimony is not directly related to Pennsbury's failure to apply in the years in question. Equitable estoppel arises when a party has intentionally or negligently misrepresented some material fact, knowing or having reason to know that another will justifiably rely on that misrepresentation, and where that other has been induced to act to his detriment because he did justifiably rely on that misrepresentation. *Central Dauphin School District v. Department of Education,* 63 Pa. Commonwealth Ct. 48, 437 A.2d 527 (1981). There was insufficient evidence of an intentional or negligent misrepresentation to Pennsbury of a material fact. In addition, and more importantly, Pennsbury if qualified would have received the allowances had it applied for them at the times and in the manner described in the regulation which had been duly published more than a year and a half before it sub-

mitted its request for reimbursement for 1972-1973. *See* 2 Pa. B. 141 (1972); 2 Pa. B. 727 (1972). The Commonwealth Documents Law at 45 Pa. C. S. §904 provides that the publication of a regulation shall be "sufficient to give notice of [its] contents . . . to any person subject thereto or affected thereby."

Order affirmed.

### ORDER

AND Now, this 9th day of November, 1983, the order of the Secretary of Education dated April 28, 1982 is affirmed.